IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARC LANSBERRY, EXECUTOR OF THE | ) | Case No. 3:18-cv-19 |
| ESTATE OF W.J.L., | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| ALTOONA AREA SCHOOL DISTRICT, | ) | |
| CHARLES PRIJATELJ, | ) | |
| SUPERINTENDENT OF THE ALTOONA | ) | |
| AREA SCHOOL DISTRICT; DON | ) | |
| ("DUTCH") BRENNAN, PRESIDENT OF | ) | |
| THE ALTOONA AREA SCHOOL | ) | |
| DISTRICT BOARD OF DIRECTORS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION[1]

### I. Introduction

This is a civil rights lawsuit arising from the suicide of W.J.L., a seventh grader at Altoona

Area School District Junior High School ("Altoona Junior High School"). W.L.J.'s father, Marc

Lansberry ("Lansberry"), brings this suit in his individual capacity and in his capacity as the

Administrator of W.J.L.'s Estate against Altoona Area School District ("AASD"), Charles Prijatelj,

AASD's Superintendent, and Don Brennan, President of AASD's Board of Directors (together

"Defendants"). (*See* ECF No. 15).

---

[1] The Court uses the term "Executor" in the caption because the parties use this term in their pleadings. The Court's use of this term does not indicate that W.J.L. left a will that named Marc Lansberry as the executor. *Compare Executor*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("A person named by a testator to carry out the provisions in the testator's will."), *with Administrator*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("A person appointed by the court to manage the assets and liabilities of an intestate decedent.")

Pending before the Court is Defendants' Motion to Dismiss Lansberry's Amended Complaint or, in the Alternative, Motion to Strike (ECF No. 16). The Motion has been fully briefed (*see* ECF Nos. 17, 21) and is ripe for disposition. For the reasons that follow, the Court will **GRANT** Defendants' Motion to Dismiss in its entirety. However, Lansberry will be granted leave to amend as to certain claims.

## II.    Jurisdiction

The Court has jurisdiction over Lansberry's federal claims pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Lansberry's state law claims pursuant to 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to the claims occurred in the Western District of Pennsylvania.

## III.    Background

### A.    Factual History[2]

W.J.L. attended Altoona Junior High School during the 2016-2017 school year as a seventh grader. (ECF No. 15 at ¶ 10.) W.J.L. was a good student and did not have disciplinary or behavioral problems. (*Id.*)

During the 2016-2017 school year, W.J.L. suffered "intense, persistent, and malicious bullying" from fellow students. (*Id.* at ¶ 11.) The bullying involved "unwanted and unwarranted physical contact," "persistent and pervasive ridicule," "threats of violence," and statements that W.J.L. was "better off dead" and should commit suicide. (*Id.* at ¶ 16.) Some of the bullying that

---

[2] The Court derives the facts presented in this section from Lansberry's Amended Complaint (ECF No. 15). The Court accepts these facts as true for the sole purpose of deciding the pending Motion.

W.J.L. suffered involved his "not being perceived to be masculine enough relative to his peers and not having the ideal appearance for a male in his age group." (*Id.* at ¶ 33.)

Students bullied W.J.L. "on school property during educational hours." (*Id.* at ¶ 11.) W.J.L. also experienced bullying off of school grounds, such as while walking back to his father's house or online through social media. (*Id.*)

W.J.L. experienced bullying in the presence of Altoona Junior High staff and fellow students. (*Id.* at ¶ 12.) In fact, "[i]t was well known throughout the school that W.J.L. was persistently picked on by his peers." (*Id.*) Furthermore, it was known that the students who bullied W.J.L. were football players. (*Id.* at ¶ 14.) However, Altoona Junior High did not take disciplinary measures against the bullies because they were members of the football team. (*Id.*)

On one occasion,[3] W.J.L. was being bullied in a male teacher's classroom and asked to leave the classroom and go to the guidance counselor's office. (*Id.* at ¶ 13.) Rather than allow W.J.L. to see the guidance counselor, the male teacher told W.J.L. that he "needed to stop being a baby." (*Id.*)

Despite the fact that students and school personnel knew about the severe and persistent bullying that W.J.L. suffered, Defendants failed to take any action to address the problem. (*Id.* at ¶ 17.) Further, in violation of school policy, school officials never notified W.J.L.'s parents about the persistent bullying their son experienced. (*Id.*)

W.J.L. killed himself on May 18, 2017. (*Id.* at ¶ 18.) W.J.L. took his life after a "particularly brutal day of bullying" at school. (*Id.*)

---

[3] The Amended Complaint does not state the date of this incident, nor name the teacher involved. (*See* ECF No. 15 at 5.)

The day after W.J.L. committed suicide, Lansberry received a phone call from AASD stating that W.J.L. was "absent" from school. (*Id.* at ¶ 19.) However, when Lansberry received this phone call, AASD had already been made aware that W.J.L. had committed suicide. (*Id.*)

A special public meeting was held on May 25, 2017. (*Id.* at ¶ 20.) At this meeting, AASD acknowledged that AASD's bullying and harassment policy was deficient. (*Id.* at ¶ 21.)

A second public event was held on April 18, 2018. (*Id.* at ¶ 21.) At that meeting, a member of AASD's board of directors stated that a bullying "problem" persisted at Altoona Junior High that had not adequately been addressed. (*Id.*) During this meting, Defendant Charles Prijatelj— the Superintendent of AASD—offered his condolences to Lansberry's counsel and his wife, mistaking them for the Lansberry family. (*Id.* at ¶ 22.) Also at that meeting, AASD's board of directors voted to hire outside counsel to review all AASD policies and procedures, with a "focus on student services." (*Id.* at ¶ 23.) However, a member of AASD's board of directors stated that the results of the attorney's work were "sitting on a shelf in the directors' room collecting dust" and that the AASD board of directors had never reviewed the recommendations.[4] (*Id.* at ¶ 24.)

After W.J.L.'s death, AASD removed items from his locker without notifying his family or the Altoona Police Department, which was investigating his suicide. (*Id.* at ¶ 25.) AASD did not produce W.J.L.'s passbook to his parents or the police.[5] (*Id.* at ¶ 26.)

---

[4] The Court observes an oddity in Lansberry's allegations about the outside counsel. Lansberry states that the AASD board of directors voted to hire the attorney, at a rate of $175 per hour, at the meeting on April 18, 2018. (ECF No. 15 at ¶ 23.) But Lansberry also alleges that, *at the same meeting*, a member of AASD's board of directors acknowledged that the attorney's report was "collecting dust" and had not been reviewed by the board. (*Id.* at ¶ 24.)

[5] Lansberry further alleges that AASD "either willfully retained evidence pertinent to the investigation of the Altoona Police Department or willfully destroyed evidence . . . ." (*Id.* at ¶ 27.) But Lansberry presents no facts to support this conclusory allegation. Accordingly, the Court finds that this allegation is "not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## B. Procedural History

Lansberry filed a Complaint before this Court (ECF No. 1), which he subsequently amended (ECF No. 15). Lansberry's Amended Complaint asserts four claims: (1) a Title IX claim against AASD; (2) a 42 U.S.C. § 1983 claim against AASD based on a "state created danger" theory[6]; (3) a survival action against all Defendants; and (4) a wrongful death claim against all Defendants.[7] (*See* ECF No. 15 at 8-19.)

Defendants move to dismiss Lansberry's Amended Complaint in its entirety and, in the alternative, to strike certain paragraphs in the Amended Complaint. (*See* ECF No. 16.)

## IV. Standard of Review

A complaint may be dismissed under Federal Rule of Civil Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). But detailed pleading is not generally required. *Id.* The Rules demand only "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

---

[6] The Court notes that, while Lansberry's Amended Complaint asserted this count against all Defendants, Lansberry subsequently conceded that this claim cannot proceed against Defendants Prijatelj and Brennan and voluntarily agreed to dismiss this claim against these individual defendants. (*See* ECF No. 25 at 5.) Accordingly, Lansberry's § 1983 claim remains only against AASD.

[7] Lansberry initially plead a loss of consortium claim against all Defendants (*see* ECF No. 15 at ¶¶ 69-71), but voluntarily dismissed that claim after Defendants filed their Motion to Dismiss. (*See* ECF No. 25 at 8; "Plaintiff does acknowledge that the Loss of Consortium claim will not survive a Motion to Dismiss solely on the grounds that an individual cannot recover a derivative claim for a violation of another's rights.")

Under the pleading regime established by *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a court reviewing the sufficiency of a complaint must take three steps.[8] First, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth.") (citation omitted). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.; see also Connelly*, 809 F.3d at 786. Ultimately, the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

V.    **Discussion**

   A.    **The Court Will Grant Defendants' Motion to Dismiss Lansberry's Title IX Claim Against AASD Because Lansberry Failed to Plead a Plausible Title IX Claim**

Defendants argue that Lansberry failed to state a cognizable Title IX claim for several reasons. Defendants argue that Lansberry merely alleges teasing and name-calling, not gender-based sexual harassment. (ECF No. 17 at 7.) Defendants further contend that Lansberry failed to

---

[8] Although *Iqbal* described the process as a "two-pronged approach," *Iqbal*, 556 U.S. at 679, the Supreme Court noted the elements of the pertinent claim before proceeding with that approach, *id.* at 675–79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly*, 809 F.3d at 787; *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010)).

allege sexual harassment that was sufficiently "severe, pervasive, and objectively offensive" that it deprived W.J.L. of access to educational opportunities. (*Id.*) Defendants further assert that Lansberry failed to allege that the Defendants knew about, or ignored, any incidents of sexual harassment. (*Id.* at 7-8.) Defendants also argue that AASD did not assert "substantial control" over any conduct occurring via social media, and thus cannot be liable for any harassment that took place online. (*Id.* at 8.) Finally, Defendants argue that the single instance of teacher bullying that Lansberry alleges neither constitutes "sexual harassment" nor rises to the level of "persistence or severity" required to state a Title IX claim, and further asserts that Lansberry did not allege that any school official had knowledge of this single incident of teacher harassment. (*Id.*)

In response, Lansberry contends that "sexual harassment did occur on school grounds during school hours through both peer harassment and bullying and at least one instance of a teacher engaging in harassment and bullying of W.J.L. while in [a] classroom during class."(ECF No. 25 at 4.[9]) Lansberry further argues that Defendants had knowledge of the harassment because "it was well-known throughout the school that W.J.L. was bullied and harassed." (*Id.*) Lansberry also asserts that Defendants withheld and/or destroyed items in W.J.L.'s locker—such as his hall passbook—and that this conduct violates AASD's policies and indicates that "Defendants did engage in willful and deliberate indifference to the ongoing harassment of W.J.L. by his peers and school personnel." (*Id.*) Lansberry states that the bullying and harassment took place "on a near

---

[9] The Court notes that "Plaintiff's Brief in Support of Answer to Defendant's [sic] Motion to Dismiss Plaintiff's Complaint" ("Lansberry's Response Brief") lacks page numbers. (*See* ECF No. 25.) The Court has inserted its own page numbers—which it references throughout this Memorandum Opinion—beginning with "1" on the first page.

daily basis" and that W.J.L. faced not merely name-calling, but also bullying that was "physical and psychological in nature." (*Id.*) Lansberry further contends that the harassment deprived W.J.L. of an educational benefit because "a benefit is to be educated in a safe, nurturing and fostering environment and not have to look over one's shoulder to see if the bullies are behind you." (*Id.*) Finally, Lansberry asserts that "Defendants cannot properly argue that an opportunity or benefit was not denied when a child chose death over life due to bullying and harassment that took place at his school." (*Id.*)

Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681. The Supreme Court has recognized a private right of action under Title IX. *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 717 (1979); *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 639 (1999). The Supreme Court has also held that money damages are available in Title IX suits. *See Davis*, 526 U.S. at 639-40 (citing *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60 (1992)).

It is well-established that Title IX encompasses student-on-student sexual harassment. *See Davis*, 526 U.S at 643; *Doe v. Bellefonte Area Sch. Dist.*, 106 F. App'x 798, 799 (3d Cir. 2004); *Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332, 365 (W.D. Pa. 2008) (Gibson, J.); *K. v. N. Allegheny Sch. Dist.*, 168 F. Supp. 3d 786, 800 (W.D. Pa. 2016) (Cercone, J.); *Brooks v. City of Philadelphia*, 747 F. Supp. 2d 477, 481 (E.D. Pa. 2010); *Lockhart v. Willingboro High Sch.*, No. CV 14-3701 (JBS/AMD), 2017 WL 4364180, at *5 (D.N.J. Sept. 29, 2017).

"To prevail in a claim of student-on-student sexual harassment under Title IX, the plaintiff must show that (1) the defendant received federal funds; (2) sexual harassment occurred; (3) the

harassment took place under 'circumstances wherein the [funding] recipient exercise[d] substantial control over both the harasser and the context in which the . . . harassment occurred'; (4) the funding recipient had 'actual knowledge' of the harassment; (5) the funding recipient was 'deliberately indifferent' to the harassment; and (6) the harassment was 'so severe, pervasive, and objectively offensive that it [could] be said to [have] deprive[d] the victims of access to the educational opportunities or benefits provided by the school.'" *Dawn L.*, 586 F. Supp. 2d at 365 (quoting *Davis*, 526 U.S. at 650); *see M.S. v. Susquehanna Twp. Sch. Dist.*, No. 1:13-CV-02718, 2017 WL 6397827, at *6 (M.D. Pa. Mar. 29, 2017) (citing *Davis*, 526 U.S. at 650) (articulating the same elements of Title IX claim for student-on-student sexual harassment).

Defendants do not contest that AASD receives federal funds. (*See* ECF No. 17.) But they contend that Lansberry failed to allege several of the other elements necessary to state a Title IX claim. This Court agrees.[10]

### 1.   Lansberry Failed to Sufficiently Plead the Existence of Sexual Harassment (Prong 2)

"Sexual harassment must be both viewed subjectively as harassing by the victim and be objectively severe or pervasive enough that a reasonable person would agree that it is harassment." *Butler v. Mountain View Sch. Dist.*, No. 3:12-CV-2038, 2013 WL 4520839, at *6 (M.D. Pa. Aug. 26, 2013) (citing *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 205 (3d Cir. 2001)); *M.S.*, 2017 WL 6397827, at *7 (quoting *Butler*, 2013 WL 4520839, at *6). The Supreme Court has instructed

---

[10] The Court observes that Lansberry dedicates only one and one-half pages of his Response Brief to defending his Title IX claim from Defendant's Motion to Dismiss. (*See* ECF No. 25 at 3-4.) More perplexingly, Lansberry cites only one case in this section—the Supreme Court opinion in *Davis*—and only to repeat the familiar six elements necessary to establish a claim of student-on-student sexual harassment. (*See id.*) In other words, Lansberry does not cite a single case to meaningfully substantiate his counter-arguments to Defendants' Motion to Dismiss his Title IX claim.

that "[w]hether gender-oriented conduct rises to the level of actionable 'harassment' ... 'depends on a constellation of surrounding circumstances, expectations, and relationships . . . ." *Davis*, 526 U.S. at 651 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)). These circumstances include, but are not limited to, "the ages of the harasser and the victim and the number of individuals involved." *Davis*, 526 U.S. at 651. Furthermore, Courts evaluating Title IX claims "must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults." *Id.*

"To survive a motion to dismiss on a Title IX claim, 'it is true that [a] plaintiff does not need to provide detailed factual support for its allegations ... [but] the plaintiff's allegations must amount to more than mere conclusory allegations.'" *Colombo v. Bd. of Educ. for Clifton Sch. Dist.*, No. 2:11-CV-00785, 2017 WL 4882485, at *10 (D.N.J. Oct. 29, 2017) (quoting *Butler*, 2013 WL 4520839, at *7).

The Court finds that Lansberry failed to state a plausible claim of sexual harassment. Lansberry alleges that W.J.L. faced "intense, persistent, and malicious bullying" throughout the 2016-2017 school year. (ECF No. 15 at ¶ 10.) But bullying—even vicious, malicious, relentless bullying—is not sexual harassment. *See Butler*, 2013 WL 4520839, at *7 (noting that "sexual harassment requires a component directly related to one's gender" whereas "[b]ullying, on the other hand, is a more generic term for abuse or intimidation, but has no required relationship to one's gender.") While Lansberry's Amended Complaint alleges that W.J.L. was brutally bullied, it fails to allege any specific instances of sexual harassment.

The only allegation in the Complaint that could be construed as sexual harassment is Lansberry's nebulous assertion that, at some unspecified place and point in time, W.J.L. "was

bullied, intimidated, and harassed in part for not being perceived to be masculine enough relative to his peers and not having the ideal appearance for a male in his age group." (*See id.* at ¶ 33.) But this conclusory allegation fails to supply the requisite factual detail necessary to give rise to a plausible Title IX claim. Lansberry does not state when this bullying occurred, what it consisted of, or how often it took place. (*See, generally, id.*) In other words, Lansberry has not supplied any facts to corroborate his vague allegations of gender-based sexual harassment.[11]

Because Lansberry failed to provide a modicum of factual detail to corroborate his vague allegations that W.J.L. suffered sexual harassment at school, the Court finds that Lansberry's well-pleaded facts fail to allege the existence of sexual harassment. *Iqbal*, 556 U.S. at 679. Accordingly, Lansberry failed to plead an essential element of his Title IX claim. *See Dawn L.*, 586 F. Supp. at 365 (citing *Davis*, 526 U.S. at 650) (articulating the six elements necessary to state a Title IX claim, including requirement that "sexual harassment occurred."). Therefore, the Court will grant Defendants' Motion to Dismiss Lansberry's Title IX claim.

The Court could end its analysis here. But even assuming *arguendo* that Lansberry sufficiently alleged the existence of student-on-student sexual harassment, Lansberry's Title IX claim would still fail to survive Defendants' Motion to Dismiss because, as explained below, Lansberry's Amended Complaint fails to sufficiently state three additional elements of his Title IX claim.

---

[11] Lansberry asserts that an Altoona Junior High teacher sexually harassed W.J.L. by telling him to "stop being a baby." (ECF No. 25 at 4.) But this isolated comment does not even relate to W.J.L.'s gender or perceived lack of masculinity. Therefore, this single statement clearly does not constitute sexual harassment for purposes of Title IX.

### 2. Even if Sexual Harassment Took Place, Lansberry Failed to Satisfy the Requirement that AASD Had "Actual Knowledge" of, or Was "Deliberately Indifferent" to, the Sexual Harassment (Prongs 4 and 5)[12]

Defendants argue that, even if sexual harassment took place on school grounds, Lansberry still failed to state a plausible Title IX claim because he failed to plausibly allege that AASD officials had "actual notice" of the sexual harassment or that they acted with deliberate indifference. (ECF No. 17 at 7-9.) In response, Lansberry argues that AASD had notice of the sexual harassment because W.J.L. suffered bullying on school grounds during school hours and because a teacher harassed and bullied W.J.L. during class. (ECF No. 25 at 4.)

To state a Title IX claim, "the plaintiff must present evidence that she provided actual notice [of the sexual harassment] to an appropriate official at the school." *Moeck v. Pleasant Valley Sch. Dist.*, 179 F. Supp. 3d 442, 449 (M.D. Pa. 2016) (citing *Bostic v. Smyrna Sch. Dist.*, 418 F.3d 353, 360 (3d Cir. 2005)).

"'Actual notice' must amount to 'actual knowledge of discrimination in the recipient's programs.'" *Bostic*, 418 F.3d at 360 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). To place a school on "actual notice" of sexual harassment, the plaintiff must allege "actual

---

[12] In the alternative to dismissing Lansberry's Amended Complaint for failure to state the existence of "sexual harassment," the Court accepts as true, for the sole purpose of deciding this Motion to Dismiss, that if "sexual harassment" occurred, it took place at least in part "on school grounds during school hours," as Lansberry avers in his Response Brief. (*See* ECF No. 25 at 4.) Accordingly, if Lansberry sufficiently pleaded the existence of sexual harassment, he also sufficiently pleaded that some of the sexual harassment took place "under 'circumstances wherein the [funding] recipient exercise[d] substantial control over both the harasser and the context in which the . . . harassment occurred.'" *Dawn L.*, 586 F. Supp. 2d at 365 (quoting *Davis*, 526 U.S. at 650). Therefore, in the alternative to dismissing Lansberry's Title IX claim for failing to allege the existence of sexual harassment, the Court accepts that Lansberry satisfied the first three elements of a Title IX claim—federal funding, the existence of sexual harassment, and substantial control over the harasser. However, as described above, even assuming *arguendo* that Lansberry satisfied these first three elements, the Court would still grant Defendants' Motion to Dismiss because Lansberry failed to satisfy the last three elements of a Title IX claim.

notice of the sexual harassment itself, not merely other bullying or teasing." *Butler*, 2013 WL 4520839, at *7; *see Frazer v. Temple Univ.*, 25 F. Supp. 3d 598, 614 (E.D. Pa. 2014) (granting motion to dismiss Title IX hostile education environment claim because while plaintiff alleged that university was on notice of former boyfriend's "propensity for violence" against fellow males, plaintiff did not allege that university had notice of prior acts of sexual harassment against females); *Moeck*, 179 F. Supp. 3d at 450 (granting motion for summary judgment on Title IX claim because "plaintiff at best has evidence that she complained . . . about name calling and cursing, which would not put the school on notice to the sexual harassment claims.").

Under Title IX, "[a]n 'appropriate person' is 'an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the . . . [district's] behalf.'" *Bostic*, 418 F.3d at 360 (quoting *Gebser*, 524 U.S. at 290); *Douglas v. Brookville Area Sch. Dist.*, 836 F. Supp. 2d 329, 346 (W.D. Pa. 2011) (McVerry, J.) (citing *Gebser*, 524 U.S. at 277) (holding that high school band teacher was not an "appropriate person" under Title IX and stating that "[o]nly an individual with the 'authority to institute corrective measures' can be fairly characterized as an 'appropriate person' under *Gebser*."). "[A] school principal who is entrusted with the responsibility and authority normally associated with that position will ordinarily be 'an appropriate person' under Title IX." *Warren ex rel. Good v. Reading Sch. Dist.*, 278 F.3d 163, 171 (3d Cir. 2002).

A school district is "deliberately indifferent" to sexual harassment "only where the [school district's] response to the harassment or [failure to respond] is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648; *see M.S.*, 2017 WL 6397827, at *7 (quoting Davis, 526 U.S. at 648). Therefore, if an "appropriate person" lacked "actual knowledge" of the sexual

harassment, the school district cannot be found to have acted with deliberate indifference. *See Frazer*, 25 F. Supp. 3d at 614.

Lansberry failed to allege that any "appropriate person" at AASD had "actual knowledge" of sexual harassment suffered by W.J.L. Lansberry does not allege that the superintendent, or principal, or assistant principal knew about any sexual harassment. (*See, generally,* ECF No. 15.) Rather, Lansberry merely alleges that unspecified school "personnel" were aware of "incidents of bullying" which occurred in their presence (*see id.* at ¶ 12, 17, 32) and that, on one occasion, an unnamed teacher told W.J.L. that he "needed to stop being a baby." (*Id.* at ¶ 13.) But unidentified school "personnel" and an unnamed "teacher" cannot, without more, be considered "appropriate persons" under Title IX because they lack the "authority to address the alleged discrimination and to institute corrective measures on the . . . [district's] behalf." *Bostic*, 418 F.3d at 360 (quoting *Gebser*, 524 U.S. at 290); *see Douglas*, 836 F. Supp. 2d at 346. Lansberry has not cited any case for the proposition that a regular classroom teacher is an "appropriate person" under Title IX, and this Court is not aware of any such authority.

More fundamentally, Lansberry's Amended Complaint fails to allege that AASD had "actual knowledge" of *sexual harassment*, as opposed to mere bullying. While Lansberry's Amended Complaint alleges that W.J.L. was consistently bullied at school and asserts that "many instances" of bullying occurred "in front of" or "in the presence of school personnel,"[13] it fails to allege that any instances of *sexual harassment* occurred, much less any that were witnessed by, or reported to, AASD personnel. In other words, while Lansberry alleges that staff members had

---

[13] *See* Amended Complaint, ECF No. 15 at ¶¶ 12, 17, 32.

-14-

knowledge that W.J.L. experienced severe bullying, Lansberry fails to allege that any staff member of AASD was on notice that he suffered sexual harassment.[14] But actual knowledge of sexual harassment—as opposed to bullying—is a necessary element of a Title IX claim. *See Butler*, 2013 WL 4520839, at *7; *Frazer*, 25 F. Supp. 3d at 614; *Moeck*, 179 F. Supp. 3d at 450.

In sum, the Court finds that, even assuming *arguendo* that W.J.L. experienced sexual harassment, Lansberry failed to allege that an "appropriate person" at AASD had "actual knowledge" of any sexual harassment that occurred. Thus, he also failed to plausibly allege that AASD was deliberately indifferent to W.J.L.'s sexual harassment. *See Frazer*, 25 F. Supp. 3d at 614. Therefore, the Court must dismiss Lansberry's Title IX claim for failure to allege these two necessary elements.

> **3.    Even if Sexual Harassment Took Place, Lansberry Failed to Plead Facts that Plausibly Support a Finding that the Harassment was So Severe, Pervasive, and Objectively Offensive that it Deprived W.J.L. of Access to Educational Opportunities (Prong 6)**

Defendants argue that if any sexual harassment occurred it was not sufficiently severe, pervasive, and objectively offensive to give rise to a Title IX claim. (ECF No. 17 at 7.) Defendants additionally argue that sexual harassment did not deprive W.J.L. of access to educational opportunities or school benefits because he was a good student and did not exhibit behavioral problems or absenteeism. (*Id.*) In response, Lansberry concedes that W.J.L.'s grades did not drop drastically after the harassment began. (ECF No. 25 at 4.) But Lansberry argues that "a benefit is to be educated in a safe, nurturing and fostering environment and not have to look over one's

---

[14] As noted above, the single incident of a teacher telling W.J.L. to stop acting "like a baby" cannot, as a matter of law, constitute sexual harassment under Title IX.

shoulder to see if the bullies are behind you." (*Id.*) Finally, Lansberry asserts that "Defendants cannot properly argue that an opportunity or benefit was not denied when a child chose death over life due to bullying and harassment that took place at his school." (*Id.*)

To state a Title IX claim for student-on-student sexual harassment, the harassment must be "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis*, 526 U.S. at 633. Courts in the Third Circuit have held that sporadic and isolated incidents of sexual harassment fail to give rise to a Title IX claim. *See C.M. v. Pemberton Twp. High Sch.*, No. CV 16-9456 (RMB/JS), 2017 WL 384274, at *6 (D.N.J. Jan. 27, 2017) (dismissing Title IX claim because the complaint only alleged "two seemingly isolated instances of alleged [sexual] harassment or discrimination, not pervasive conduct" and failed to explain how the victim "ha[d] been denied equal access to educational opportunities or benefits as a result of these two incidents."); *Moeck*, 179 F. Supp. 3d at 448 (dismissing Title IX claim and holding that being subjected to "ten sexually-tinged comments over the course of two or three years" fails to give rise to a Title IX claim).

The Court finds that the Amended Complaint fails to allege sexual harassment that is sufficiently severe, pervasive, and objectively offensive to give rise to a Title IX claim. *See Davis*, 526 U.S. at 633. Lansberry alleges that W.J.L. was bullied "in part for not being perceived to be masculine enough relative to his peers and not having the ideal appearance for a male in his age group." (ECF No. 15 at ¶33) But this nebulous allegation fails to establish that the sexual harassment was sufficiently severe, pervasive, and objectively offensive to state a claim under Title IX. Lansberry does not state how often W.J.L. was bullied for his perceived lack of masculinity, nor what words or actions the bullies deployed to torment him, nor how the sexual

-16-

harassment—as opposed to the general bullying—denied W.J.L. educational opportunities. (*See, generally,* ECF No. 15.) Furthermore, the Court is cognizant of decisions from other district courts in the Third Circuit that have held that sporadic instances of sexual comments do not, without more, give rise to a Title IX claim. *See C.M.,* 2017 WL 384274, at *6; *Moeck,* 179 F. Supp. 3d at 448. Lansberry's Amended Complaint fails to allege that the instances of sexual harassment—as opposed to mere bullying—were more than sporadic occurrences.

In conclusion, Lansberry's Amended Complaint fails to allege that W.J.L. experienced sexual harassment that was sufficiently severe, pervasive, and offensive to give rise to a Title IX claim. Therefore, the Court must dismiss Lansberry's Title IX claim for its failure to allege this necessary element.

### 4.    **Conclusion**

As stated above, Lansberry failed to allege the existence of sexual harassment which, by itself, warrants dismissal of Lansberry's Title IX claim. But even accepting, in the alternative, that Lansberry sufficiently alleged the existence of sexual harassment, the Court still must dismiss Lansberry's Title IX claim. First, Lansberry failed to allege that an "appropriate person" at AASD had "actual knowledge" of any sexual harassment and acted with "deliberate indifference." Second, Lansberry failed to allege that the sexual harassment, as opposed to mere bullying, was sufficiently severe, pervasive, and objectively offensive to give rise to a Title IX claim. For these independently sufficient reasons, the Court will grant Defendants' Motion to Dismiss Lansberry's Title IX claim.

**B. The Court Will Dismiss Lansberry's §1983 State-Created Danger Claim Against AASD Because Lansberry Failed to Allege an Affirmative Use of State Authority**

**1. Introduction: The State-Created Danger Doctrine**

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States." *Morrow v. Balaski,* 719 F.3d 160, 165-66 (3d Cir. 2013) (citing *Nicini v. Morra,* 212 F.3d 798, 806 (3d Cir. 2000) (en banc)). Thus, "[t]he first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to [then] determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Morrow,* 719 F.3d at 165-66 (quoting *Nicini,* 212 F.3d at 806).

Lansberry's § 1983 claim alleges a violation of the Due Process Clause of the Fourteenth Amendment. (*See* ECF No. 15.) The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Amended Complaint alleges that AASD violated W.J.L.'s right to bodily integrity (ECF No. 15 at ¶ 67), which is protected by the substantive component of the Due Process Clause. *See Phillips v. Cty. of Allegheny,* 515 F.3d 224, 235 (3d Cir. 2008) (citing *D.R. v. Middle Bucks Area Vocational Technical Sch.,* 972 F.2d 1364, 1368 (3d Cir. 1992)) ("Individuals have a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment.")

"But as the Supreme Court has explained, 'nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors.'" *Gayemen v. Sch. Dist. of City of Allentown,* 712 F. App'x 218, 220 (3d

Cir. 2017) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989)). In fact,

the Supreme Court has held that, "[a]s a general matter . . . a State's failure to protect an individual

against private violence simply does not constitute a violation of the Due Process Clause."

*DeShaney*, 489 U.S. at 197. This is because the purpose of the Due Process Clause "is to protect the

people from the State, not to ensure that the State protect[s] [the people] from each other." *Id.*

However, the Third Circuit recognizes a "'state-created danger' exception to the general

rule that the Due Process Clause imposes no duty on states to protect their citizens from private

harm."[15] *L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 235, 242 (3d Cir. 2016) (citing *Kneipp v. Tedder*,

95 F.3d 1199, 1201 (3d Cir. 1996)); *Phillips*, 515 F.3d at 235. The Third Circuit has established four

necessary elements to constitute a state-created danger claim:

1. The harm ultimately caused was foreseeable and fairly direct;
2. A state actor acted with a degree of culpability that shocks the conscience;
3. A relationship between the state and the plaintiff existed such that the plaintiff
   was a foreseeable victim of the defendant's acts, or a member of a discrete class
   of persons subjected to the potential harm brought about by the state's actions,
   as opposed to a member of the public in general; and
4. A state actor affirmatively used his or her authority in a way that created a
   danger to the citizen or that rendered the citizen more vulnerable to danger
   than had the state not acted at all.

*L.R.*, 836 F.3d at 242 (quoting *Bright v. Westmoreland Cty.*, 443 F.3d 276, 281 (3d Cir. 2006));

*Gayemen*, 712 F. App'x at 220 (quoting *Bright*, 443 F.3d at 281); *Morrow*, 719 F.3d at 177 (quoting

*Bright*, 443 F.3d at 281).

---

[15] The Supreme Court also recognizes a second exception, known as the "special relationship" exception.
*See DeShaney*, 489 U.S. at 199-200. The "special relationship" exception applies "when the State takes a
person into its custody and holds him there against his will." *Id.* The Third Circuit has appropriately
characterized this exception as "very narrow." *Morrow*, 719 F.3d at 167. Lansberry does not argue that the
"special relationship" exception applies here.

"We begin with the fourth element, as it is typically the most contested." *L.R.*, 836 F.3d at

242.

> ### 2. Lansberry Failed to Allege an Affirmative Use of State Authority that Rendered W.J.L. More Vulnerable to Danger than He Would Have Been Had Defendants Done Nothing (Prong 4)

Defendants argue that the Court should dismiss Lansberry's state-created danger claim

because Lansberry failed to allege an affirmative act by Defendants that harmed W.J.L. or made

him more vulnerable to the danger than he would have been had Defendants done nothing at all.

(ECF No. 1 at 11-15.) Defendants further contend that returning an alleged bully to a school

environment does not, as a matter of law, constitute an affirmative action. (*Id.* at 15.) Finally,

Defendants assert that their failure to report the bullying that W.J.L. suffered to W.J.L.'s parents

fails to constitute an affirmative action. (*Id.*)

Lansberry advances two arguments in response. First, Lansberry argues that Defendants'

inaction in the face of the persistent bullying suffered by W.J.L. constituted affirmative action.

(ECF No. 25 at 5.) Second, Lansberry contends that the male teacher who told W.J.L. to stop being

a "baby" and prevented him from visiting the guidance counselor took an affirmative action

attributable to Defendants. (*Id.* at 6.) Lansberry asserts that these two "affirmative actions" by

Defendants rendered W.J.L. more vulnerable to the danger and contributed to his decision to take

his life. (*Id.* at 7.)

The affirmative act requirement "ensures that defendants are only liable for 'misuse of

state authority, rather than a failure to use it.'" *Gayemen*, 712 F. App'x at 220 (citing *Bright*, 443

F.3d at 282.). The Third Circuit instructs that, when determining whether a state actor committed

an affirmative act, a court should "first evaluate the setting or the 'status quo' of the environment

before the alleged act or omission occurred, and then to ask whether the state actor's exercise of authority resulted in a departure from that status quo." *L.R.*, 836 F.3d at 243; *see Gayemen*, 712 F. App'x at 220 (quoting *L.R.*, 836 F.3d at 243).

The Third Circuit has repeatedly rejected attempts by plaintiffs to "redefine clearly passive inaction as affirmative acts." *Morrow*, 719 F.3d at 178 (affirming district court's dismissal of state-created danger claim and holding that failure to expel a known bully did not constitute an affirmative act); *see Bright*, 443 F.3d at 284 (affirming district court's dismissal of state-created danger claim and holding that probation officer's failure to promptly and appropriately respond when she witnessed probationer violate terms of probation by speaking to minor victim did not constitute an affirmative act); *Gayemen*, 712 F. App'x at 221 (affirming dismissal of state-created danger claim on summary judgment and holding that school officials' failure to take appropriate steps to address student-perpetrated gang violence did not constitute an affirmative act); *Sanford v. Stiles*, 456 F.3d 298, 312 (3d Cir. 2006) (affirming dismissal of state-created danger claim on summary judgment and holding that guidance counselor's failure to adequately follow-up on student's threats of suicide did not constitute an affirmative act).

Finally, a school's failure to enforce its own policy does not constitute an affirmative act. *See Morrow*, 719 F.3d at 178-79 (holding that school did not take an affirmative action when it failed to expel bully as mandated by school policy); *Gayemen*, 712 F. App'x at 221 (holding that "[t]he School District's failure to remove students from the school simply does not constitute an affirmative act, even if school policy required their removal."); *Beam v. W. Wayne Sch. Dist.*, 165 F. Supp. 3d 200, 215 (M.D. Pa. 2016) (dismissing state-created danger claim and holding that school's

failure to comply with state-mandated plan for special education student who ultimately committed suicide did not comprise an affirmative act).

The Court sympathizes with Lansberry and does not condone AASD's inaction in the face of the persistent bullying that W.J.L. faced. However, while the Amended Complaint describes a tragic series of events, it fails to allege any affirmative use of state authority on the part of AASD. Accordingly, the Court must dismiss Lansberry's §1983 state-created danger claim.

AASD's failure to adequately address the bullying that W.J.L. suffered did not constitute an affirmative act. *See Morrow*, 719 F.3d at 178; *Gayemen*, 712 F. App'x at 221. The Court rejects Lansberry's attempt to recast AASD's *inaction* as an action. *See Morrow*, 719 F.3d at 178; *Bright*, 443 F.3d at 284; *Gayemen*, 712 F. App'x at 221. Furthermore, Defendants' failure to intervene to stop the bullying merely preserved the status quo. *See L.R.*, 836 F.3d at 243. Therefore, contrary to Lansberry's contention, AASD's failure to take appropriate action does not constitute an affirmative act that can subject AASD to liability under the state-created danger doctrine.

The Court rejects Lansberry's argument that AASD took affirmative action by violating its own policy of informing parents when their children suffer bullying. As noted above, the Third Circuit has held that a school's failure to enforce its own policy does not comprise an affirmative use of state authority. *See Morrow*, 719 F.3d at 178-79; *Gayemen*, 712 F. App'x at 221. Therefore, the fact that AASD ignored its own anti-bullying policy by failing to intervene cannot, as a matter of law, constitute state action.

-22-

The Court similarly rejects Lansberry's contention that the male teacher's isolated comment to W.J.L. constituted affirmative use of state authority.[16] While this comment was insensitive and inappropriate, it does not constitute an affirmative action for the purposes of the state-created danger doctrine for three independently sufficient reasons.

First, the teacher's denial of W.J.L.'s request to visit the guidance office maintained the status quo. The teacher required W.J.L. to remain in class under his supervision. Lansberry has not alleged that denying W.J.L.'s request to leave class violated the status quo or classroom protocol. Therefore, the Court holds that the teacher's denial did not constitute an affirmative use of state authority. *L.R.*, 836 F.3d at 243.

Second, the Amended Complaint fails to explain how the teacher's insensitive comment rendered W.J.L. "more vulnerable to danger." *Id.* at 242. In fact, the Amended Complaint does not even name the teacher or allege when he made the comment. Lansberry does not allege a causal connection between W.J.L.'s suicide and the teacher's remark, or explain how one isolated statement could have increased W.J.L.'s vulnerability to danger. Because Lansberry failed to plead facts that plausibly support the conclusion that teacher's isolated comment increased W.J.L.'s vulnerability to danger, the Court holds that the remark did not constitute an affirmative use of state authority. *Id.*

Third, an isolated comment by a teacher is fundamentally different from the conduct that courts have found to constitute affirmative uses of state authority for the purposes of the state-created danger doctrine. *See, e.g., L.R.*, 836 F.3d at 244 (holding that teacher affirmatively used

---

[16] As noted above, at some point during the 2016-2017 school year, W.J.L. was bullied in class, asked a male teacher to go to the guidance counselor's office, and the teacher denied his request and told him to "stop being a baby." (ECF No. 15 at ¶ 13.)

state authority when she authorized an unidentified adult to remove a kindergarten student from classroom); *Kneipp*, 95 F.3d at 1209 (holding that police officers affirmatively used state authority when they stopped a couple late at night, released the man, and allowed a visibly intoxicated woman walk home alone in the cold). The exercise of state authority here is much more tenuous than in *L.R.* and *Kneipp*. The teacher did not release W.J.L. to an unidentified stranger or permit him, while visibly impaired, to navigate home by himself on a cold evening. Lansberry has failed to cite a single case for the proposition that the teacher affirmatively used state authority by making an isolated insensitive remark and denying W.J.L.'s request to visit the guidance counselor's office.[17] And the Court is unaware of any case that embraces such an expansive definition of state action. Accordingly, the Court finds that the teacher's isolated comment fails to constitute an affirmative act for the purposes of the state-created danger doctrine.

Because Lansberry failed to allege an affirmative use of state authority, the Court will grant Defendants' Motion to Dismiss Lansberry's state-created danger claim. The Court need not address the remaining elements of the claim. *See Beam*, 165 F. Supp. 3d at 215.

---

[17] The Court notes that Lansberry's Response Brief is utterly unhelpful because it fails to meaningfully address the Defendants' legal arguments for why the Court should dismiss Lansberry's state-created danger claim. Rather than citing cases to counter Defendants' arguments, Lansberry merely (1) identifies the elements of a state-created danger claim, and (2) articulates policy arguments (unsupported by any case citations) for why the Court should hold that Defendants' inaction constituted an affirmative use of state authority. (*See* ECF No. 25 at 6.) Lansberry's most creative, yet least persuasive, argument is that Defendants' duty to act in the face of bullying is analogous to attorneys' duty to act when they observe a violation of the Rules of Professional Conduct. (*Id.* at 7.) But Lansberry fails to explain where Defendants' purported duty originates, or why, if such duty existed, it would mirror that which governs attorneys. Accordingly, this argument fails to persuade the Court.

**C.** **The Court Will Dismiss Lansberry's *Monell* Claim Because Plaintiff Did Not Plausibly Allege a Policy, Act by a Policymaker, or a Pattern of Constitutional Violations**

Lansberry's Amended Complaint does not explicitly assert a *Monell* claim. However, Lansberry's Amended Complaint alleges that Defendants violated AASD "policy/regulation" by failing to remedy the persistent bullying that W.J.L. experienced. (See ECF No. 15 at ¶¶ 9; 17; 53; 55; 60.) Because Lansberry's Complaint references an AASD "policy/regulation," Defendants proactively address the *Monell* issue in their brief, arguing that Lansberry failed to sate a *Monell* claim because he failed to allege that the implementation of an AASD policy or practice caused W.J.L.'s death. (ECF No. 17 at 18.) In response, Lansberry now argues in his Response Brief that his Amended Complaint did in fact articulate a *Monell* claim. (See ECF No. 25 at 7.) Lansberry contends that AASD had a custom or practice of ignoring state law and its own anti-bullying policies, and that this failure establishes willful indifference and deliberate inaction sufficient to support a *Monell* claim. (*Id.*)

Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), municipal liability exists if "deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 400 (1997) (citing *Monell*, 436 U.S. at 694 (1978)). But "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *Robinson v. Fair Acres Geriatric Ctr.*, 722 F. App'x 194, 197 (3d Cir. 2018) (quoting *Monell*, 436 U.S. at 691). For AASD to be liable, Lansberry must establish that the AASD had a "policy or custom" and that the policy or custom

"caused" the constitutional violations that Lansberry alleges. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (citing *Bryan Cty.*, 520 U.S. at 404).

As the Third Circuit has explained, "[n]ot all state action rises to the level of a custom or policy." *Natale*, 318 F.3d at 584. Rather, "[a] policy is made 'when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict.'" *Id.* (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996)). "'Customs,' when referred to in the context of § 1983 actions, include only 'practices of state officials . . . so permanent and well settled as to constitute a custom or usage with the force of law.'" *Robinson*, 722 F. App'x at 198 (internal quotation marks omitted) (quoting *Monell*, 436 U.S. at 691).

"There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983." *Robinson*, 722 F. App'x at 198 (quoting *Natale*, 318 F.3d at 584). First, an employee's action can be considered to result from a policy or custom "where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." *Robinson*, 722 F. App'x at 198 (internal quotation marks omitted) (quoting *Natale*, 318 F.3d at 584). Second, an employee's action can be said to result from a policy or custom "where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." *Robinson*, 722 F. App'x at 198 (internal quotation marks omitted) (quoting *Natale*, 318 F.3d at 584). Third, an employee's actions can be determined to arise from a policy or custom "where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the

-26-

violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Robinson*, 722 F. App'x at 198 (internal quotation marks omitted) (alteration in original) (quoting *Natale*, 318 F.3d at 584). Because Lansberry has not alleged that W.J.L.'s suicide resulted from a "generally applicable statement of policy" or "an act of the policymaker itself," *Robinson*, 22 F. App'x at 198, Lansberry must satisfy the third theory of *Monell* liability by establishing that AASD acted with deliberate indifference to W.J.L.'s constitutional rights. *See id.*

As the Third Circuit recently noted, "[d]eliberate indifference stems from government inaction, namely a [municipality's] failure to train its employees on avoiding constitutional violations." *Wright v. City of Philadelphia*, 685 F. App'x 142, 147 (3d Cir. 2017). "To show the deliberate indifference required for a 'failure to train' claim, a § 1983 plaintiff must show 'a municipal actor disregarded a known or obvious consequence of his action.'" *Wright*, 685 F. App'x 142, 147 (3d Cir. 2017) (quoting *Bryan Cty.*, 520 U.S. at 410). Deliberate indifference "may stem from a failure to act despite notice [that municipal] employees continually violate citizens' rights." *Wright*, 685 F. App'x at 147. Ordinarily, finding policymakers deliberately indifferent based on a failure-to-train theory requires "[a] pattern of similar constitutional violations by untrained employees."[18] *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).

---

[18] In some cases, "a single constitutional violation may amount to deliberate indifference." *Wright*, 685 F. App'x at 147 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)). For instance, "[t]he Supreme Court hypothesized policymakers would be deliberately indifferent to citizens' rights if they 'kn[ew] to a moral certainty' armed officers would have to arrest fleeing felons but failed to train those officers on the constitutional limitations on the use of deadly force." *Wright*, 685 F. App'x at 147 (quoting *Canton*, 489 U.S. at 390). In these circumstances, the need for special deadly-force training would be "so obvious" that not providing it would amount to deliberate indifference and would constitute a policy attributable to the municipality. *Wright*, 685 F. App'x at 147 (citing *Canton*, 489 U.S. at 390). "But such oversights will only amount to deliberate indifference in a 'narrow range of circumstances.'" *Wright*, 685 F. App'x at 147

After several careful readings of the Amended Complaint, the Court finds that Lansberry

failed to state a plausible *Monell* claim. As noted above, to state a plausible claim for deliberate

indifference in the § 1983 context, a plaintiff generally must allege that the government entity had

notice of a pattern of similar constitutional violations by employees who had not been properly

trained. *See Wright*, 685 F. App'x at 147. However, Lansberry's Amended Complaint fails to allege

that AASD had notice of a pattern of constitutional violations. For example, Lansberry does not

allege that AASD had received, and failed to adequately respond to, previous reports of bullying.

Nor does he allege that other students' rights to bodily integrity had been violated due to known

bullying incidents that the school failed to properly address. In other words, while Lansberry

alleges that W.J.L. experienced bullying, he does not allege a wider bullying problem at AASD

that could have plausibly put AASD on notice that the constitutional rights of its students were

being violated. Accordingly, Lansberry does not plausibly allege that, given the conditions at

Altoona Junior High with regard to bullying, the need for additional training was "so obvious"

and the status quo so likely to result in constitutional violations that AASD "can reasonably be

said to have been deliberately indifferent to the need." *Robinson*, 722 F. App'x at 198. Therefore,

the Court finds that Lansberry failed to state a plausible *Monell* claim.

---

(quoting *Bryan Cty.*, 520 U.S. at 409). Furthermore, "[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *Wright*, 685 F. App'x at 147 (quoting *Canton*, 489 U.S. at 392). With this in mind, the Supreme Court has cautioned courts to resist "engag[ing] . . . in an endless exercise of second-guessing municipal employee-training programs." *Id.* (quoting *Canton*, 489 U.S. at 392). The parties have not briefed the issue of whether AASD's failure to intervene to prevent the bullying of W.J.L. constitutes a "narrow circumstance" that would, by itself, constitute deliberate indifference. Accordingly, the Court will refrain from ruling on this issue at present and will instead address the issue after Lansberry files a Second Amended Complaint.

**D.   The Court Will Dismiss Lansberry's Wrongful Death and Survival Action Claims**

Lansberry asserts that his Wrongful Death and Survival Action claims against all Defendants are "derivative of the Title IX and U.S.C. § 1983 claims." (ECF No. 25 at 8.) Indeed, in defending these claims against Defendants' Motion to Dismiss, Lansberry does not provide any new arguments and instead merely "rel[ies] upon the arguments made relative to [his Title IX and U.S.C. § 1983 claims] throughout this brief." (ECF No. 25 at 8.) Given that the Court has dismissed Lansberry's Title IX and § 1983 claims, and that Lansberry avers that his state tort claims are merely "derivative" of these federal claims, the Court will also dismiss Lansberry's state tort claims.[19]

**E.   Leave to Amend**

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *CollegeSource, Inc. v. AcademyOne, Inc.*, 597 F. App'x 116, 126 (3d Cir. 2015) (quoting *Phillips*, 515 F.3d at 245). Amendment would be futile "if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Munchak v. Ruckno*, 692 F. App'x 100, 102 (3d Cir. 2017) (internal citations omitted).

The Court finds that leave to amend would be futile with respect to Lansberry's §1983 state-created danger claim. As noted above, Lansberry has not identified an affirmative use of

---

[19] The Court notes that Defendants assert that the Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA"), 42 Pa. C.S. § 8541, bars Lansberry's state tort claims because Defendants were acting in the scope of their employment and because governmental units have immunity from willful misconduct. (ECF No. 17 at 21-23.) The Court will not determine whether the PPSTCA bars Lansberry's state claims at this time because, as noted above, the Court will dismiss these claims on other grounds.

state authority. Further, Lansberry cannot plausibly establish a causal connection between any affirmative action by AASD and W.J.L.'s suicide. Accordingly, the Court denies Lansberry leave to amend his §1983 state-created danger claim.

The Court will grant Lansberry leave to amend his Title IX, *Monell*, and state law claims. Based on the information currently available to the Court, the Court cannot assess whether future amendment of these claims would be futile. *See Munksjo Paper AB v. Bedford Materials Co.*, No. 3:16-CV-270, 2018 WL 1866086, at *6 (W.D. Pa. Apr. 18, 2018) (Gibson, J.) (granting leave to amend because Court lacked sufficient information to determine whether future amendment of claims would be futile). Accordingly, the Court shall grant Lansberry leave to amend these claims. As stated in the Order accompanying this Memorandum Opinion, Lansberry shall have 30 days to filed a Second Amended Complaint, if he so chooses.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARC LANSBERRY, EXECUTOR OF THE** ) <br> **ESTATE OF W.J.L.,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> **v.** ) <br> ) <br> **ALTOONA AREA SCHOOL DISTRICT,** ) <br> **CHARLES PRIJATELJ,** ) <br> **SUPERINTENDENT OF THE ALTOONA** ) <br> **AREA SCHOOL DISTRICT; DON** ) <br> **("DUTCH") BRENNAN, PRESIDENT OF** ) <br> **THE ALTOONA AREA SCHOOL** ) <br> **DISTRICT BOARD OF DIRECTORS,** ) <br> ) <br> **Defendants.** ) | **Case No. 3:18-cv-19** <br><br> **JUDGE KIM R. GIBSON** |

## ORDER

**AND NOW**, this ___20th___ day of July, 2018, upon consideration of Defendants' Motion

to Dismiss (ECF No. 16), and in accordance with the attached memorandum opinion, **IT IS**

**HEREBY ORDERED** that the motion is **GRANTED. IT IS FURTHER ORDERED:**

1. Lansberry's §1983 state-created danger claim is **dismissed without leave to amend**.

2. Lansberry's Title IX claim, his *Monell* claim, and his state tort claims are **dismissed subject**

   **to leave to amend**. Lansberry shall have **30 days** from the date of this order to file a Second

   Amended Complaint, if he so chooses.

3. **IT IS FURTHER ORDERED** that Lansberry's Motion to Strike Defendants' Reply Brief

   (ECF No. 30) is **denied**. Contrary to Lansberry's contention, Defendants did not

   inappropriately file a reply brief, because the Court granted Defendants' motion for leave

   to file a reply. (*See* ECF No. 27.)

4. **FINALLY, IT IS ORDERED** that AASD's Motion to Dismiss Lansberry's Initial

Complaint (ECF No. 8) is **denied as moot**.

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**